UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**F I L E D**

SEP 13 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-412-GWU

KATHY ASHER,                                                      PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

### INTRODUCTION

Asher originally brought <u>Asher v. Commissioner of Social Security</u>, London

Civ. Action No. 02-291 (E.D. Ky.) to appeal the negative administrative decision

concerning her application for Supplemental Security Income (SSI). The case was

remanded to the administrative agency for further consideration in May of 2003 and,

upon remand, proceedings on a second SSI application was consolidated with the

renewed proceedings. After another negative decision (Tr. 245-252), the appeal is

again before the Court, on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     <u>See</u> 20 C.F.R. 404.1520(b), 416.920(b).

1

Asher

2.   Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Asher

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

3

Asher

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:   (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

4

Asher

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then

an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants

6

Asher

. . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan,
905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the
Commissioner may still use the rules as a framework for decision-making, 20 C.F.R.
Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term
"framework" in the text of the decision is insufficient, if a fair reading of the record
reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency
may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d
279, 282 (6th Cir. 1985). Even then, substantial evidence to support the
Commissioner's decision may be produced through reliance on this expert testimony
only if the hypothetical question given to the expert accurately portrays the plaintiff's
physical and mental impairments. Varley v. Secretary of Health and Human
Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that the plaintiff suffered from
"severe" diabetes, obesity, and the residuals of coronary artery bypass grafting. (Tr.
251). Despite these conditions, the ALJ concluded that the plaintiff remained
capable of a limited range of medium level work, based on the residual functional
capacity opinions of the non-examining medical reviewers and Consultative
Examiner Mark Burns. (Tr. 250-251). According to vocational expert (VE) testimony
relied upon by the ALJ, the plaintiff could perform significant numbers of jobs in the

Asher

economy such as cosmetologist[1] and maid/janitor. (Tr. 250). Thus, benefits were denied. (Tr. 252).

The plaintiff argues that the ALJ improperly did not consider any mental impairments (and borderline intellectual functioning in particular) to be "severe" impairments. No mental health professional has ever diagnosed such a condition, as far as is documented in the record, nor were any school records introduced showing academic conduct or intellectual difficulties. The plaintiff's mother filled out a questionnaire in July, 2002 discussing Asher's usual activities; she indicated that her daughter read some, played on the computer, fixed snacks, washed her clothing, shopped for groceries and books, used a checkbook/money orders, watched tv, went to Sunday School each Sunday and was Assistant Treasurer at the Sunday School. (Tr. 333-336). The mother also indicated Asher had no problem getting along with family, friends, neighbors or others (Tr. 337) and could handle changes in routine or follow spoken instructions "pretty well" (Tr. 338). That same month, the plaintiff herself indicated that she was able to drive to town, pay her bills, and go to the bank, post office and grocery; she had reportedly attended no special classes and

---

[1]In the first administrative decision, reversed and remanded for further consideration by the undersigned, the plaintiff had been found capable of returning to her past work as a cosmetologist. In the current administrative decision, it was noted that the plaintiff had worked as a cosmetologist in the past, but not enough for it to constitute "past relevant work." (Tr. 246-247). Thus, the current denial was based on the capacity to perform jobs in the economy.

8

repeated no grades while in school. (Tr. 322). Certain treating source statements do not imply a significant mental disorder. (Tr. 481, 487). While Treating Cardiologist Collatz did reference depression on one of his assessment forms (Tr. 139), he did not on the others. (Tr. 135, 140) and neither the medical reviewers (Tr. 376, 401) or the testifying medical expert (Tr. 534-536) felt that she had a "severe" mental impairment of any kind.

As far as the assessment of Asher's physical capacity is concerned, the only set of restrictions for which job categories and their numbers were identified was a medium level--no temperature extreme combination. (Tr. 536). Greater restrictions, however, were noted by (1) Treating Physician Emmanuel Yumang, who indicated that the plaintiff was disabled in May, 2003 (Tr. 479), (2) Treating Physician Fred Collatz, who on three occasions in 1999 and 2000 expressed an opinion consistent with disability or less than full-time sedentary work (Tr. 135, 137, 140), and (3) Medical Reviewers Hernandez, Rawlings and Hall (Tr. 105-112, 119-126, 392-399).

The ALJ, instead, indicated that he relied upon two other medical reviewers' opinions from 2003. (Tr. 250-251, 424-432, 434-434). The second opinion[2] cited no rationale or discussion whatsoever (Tr. 434-435) and the first mentioned no underlying opinion from treating or examining sources except the consultative examiner (Tr. 430, 432). Thus, these opinions were inadequate, particularly in failing

---

[2]The signature on this assessment is illegible.

Asher

to even remotely address the opinions or limitations from treating sources, see

Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) and, particularly as they were

"current" assessments for 2003, to discount earlier assessments.[3]

The case will be remanded for further consideration.[4]

This the ___13___ day of September, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[3]Unlike the medical reviewers and Dr. Collatz, Consultative Examiner Burns did not complete a detailed assessment form. He also apparently had no access to detailed past medical records (e.g., "she claims" and "Ms. Asher says . . ." at Tr. 416-417) and ordered no laboratory testing. He did not address visual acuity (Tr. 418), something a previously discredited consultative examiner had also not done and been criticized for by the agency (Tr. 398, 400) and seems to have been under the assumption that Asher had no visual problems (Tr. 419), despite the fact that multiple diagnoses of diabetic retinopathy exist in the record (Tr. 127, 136, 140) and the fact that, for example, the treating source ascribed some limitation to this condition (Tr. 138).

[4]The Court notes in passing that the ALJ's description of Exhibit B-15F (Tr. 249) seems to have omitted a reference to a 2001 EKG showing evidence of a possible old anterior infarction and borderline abnormal changes possibly due to myocardial ischemia (Tr. 514), in apparent contrast to a 1999 post-bypass graft EKG showing no ischemia or previous infarction (Tr. 192).

10